Parmer A. Gillespie v. Commissioner. Bernard A. Gillespie v. Commissioner. Lester A. Gillespie v. Commissioner. Bernard A. Gillespie, Jr. v. Commissioner.
Gillespie v. Comm'r
Docket Nos. 5867, 5881, 5882, 5883, 5987. United States Tax Court 1946 Tax Ct. Memo LEXIS 22; 5 T.C.M. (CCH) 1028; T.C.M. (RIA) 46285; December 5, 1946
Harold E. Rorschach, Esq., 1046 Kennedy Bldg., Tulsa 3, Okla., and Jack L. Rorschach, Esq., for the petitioners. Stanley B. Anderson, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, consolidated for hearing and disposition, involve deficiencies in estate tax, transferee liability and personal liability under section 3467 of the Revised Statutes of the United States as amended, as follows: Personal Lia-
Docket
Estate Tax
Transferee
bility under
Petitioner
Number
Liability
Liability
Section 3467
Parmer A. Gillespie
5881
$51,238.88
Bernard A. Gillespie
5882
$51,238.88
Lester A. Gillespie
5883
51,238.88
Bernard A. Gillespie, Jr.
5987
51,238.88
Parmer A. Gillespie
5867
51,238.88
$51,238.88 The issues to be determined are: (1) Should the petitions of Bernard A. Gillespie, Jr., docket No. 5987, and Parmer A. Gillespie, docket No. 5881, be dismissed for lack *24 of jurisdiction? (2) Should there be included in the gross estate of decedent Maud A. Gillespie the fair market value of 2,000 shares of stock of F. A. Gillespie and Sons Company? (3) Was decedent's estate entitled to receive the sum of $62,917.05 from F. A. Gillespie and Sons Company, so as to make such amount includible in decedent's gross estate? (4) Should transferee liability be asserted against petitioners in docket Nos. 5867, 5882, 5883 and 5987 as being transferees of decedent's estate? (5) Is Parmer A. Gillespie, docket No. 5867, personally liable under section 3467 of the Revised Statutes of the United States for the deficiencies asserted against decedent's estate? A stipulation of facts was filed. We adopt same by reference and find the facts therein set forth. Such parts thereof as it is considered necessary to set forth are included with other facts found from evidence adduced in our Findings of Fact *
Maud McCoy Gillespie (hereinbefore and after sometimes referred to as "decedent") was born June 9, 1872, and died testate September 16, 1941, in Beverly Hills, California. *25 Her will was probated in the Superior Court of the State of California, in and for the County of Los Angeles. The will provided that all property not specifically mentioned therein be divided equally as decedent's sons saw fit. Parmer A. Gillespie of Tulsa, Oklahoma, was appointed executor of the estate October 20, 1941, and notice of his appointment was given to the collector at Los Angeles by Form 704, on December 5, 1941. The estate tax return for her estate was filed with the collector of internal revenue for the sixth district of California, at Los Angeles, on November 10, 1943. It showed the address of the executor Parmer A. Gillespie, as 912 Thompson Building, Tulsa, Oklahoma. Along with other information on the estate tax return, the following schedule appears: HEIRS, NEXT OF KIN DEVISEES AND LEGATEES (If more than five, only the names of the five principal ones are required.) Name
Relationship
Address
Bernard A. Gillesple
Son
Theba, Ariz.
Lester A. Gillespie
Son
Houston, Tex.
Parmer A. Gillespie
Son
Tulsa, Okla.
Bernard A. Gillespie,
Jr.
Grandson
Theba, Ariz.
Parmer A. Gillespie filed Affidavit for Final Discharge in the *26 estate of the decedent July 13, 1943, and was at that time discharged as executor by the court. On February 3, 1944, the Commissioner of Internal Revenue, Washington, D. C., attention Harry C. Westover, Collector of Internal Revenue, 6th District of California, was informed by letter by counsel for the executor, that he had been discharged, the estate closed and final decree entered. On February 23, 1944, Harry C. Westover, collector, answered, referring to the language of the letter of February 3, as to discharge of executor. The following letter was received by Mr. H. E. Rorschach, attorney for petitioners, from D. A. Sims, internal revenue agent in charge of the Oklahoma City division, under date of April 21, 1944: We note from the audit of the estate tax return for the above-named estate that you are listed as attorney for the estate in the preparation of Form 706 filed with the Collector of Internal Revenue for the 6th District of California. We are desirous of securing the correct addresses of the beneficiaries of this estate. Therefore, it would be appreciated if you would give us the correct address of: Bernard A. Gillespie Lester A. Gillespie Parmer A. Gillespie *27 and Bernard A. Gillespie, Jr. This information is desired in order that this office may issue thirty-day transferee letters to the beneficiaries of this estate inasmuch as the estate has been closed in the Superior Court in and for Los Angeles County, California. R. E. Rorschach answered the request for the addresses of the several members of the Gillespie family in a letter to D. A. Sims, under date of April 22, 1944, as follows: B. A. Gillespie is located at Gila Bend, Arizona. Mr. L. A. Gillespie is located in Houston, Texas. I do not have his street address available. Mr. P. A. Gillespie is located in Tulsa, Oklahoma. His mailing address is 912 Thompson Building. B. A. Gillespie, Jr. is in the Army Air Force. The last information I have is that he is in foreign service. Facts on Jurisdictional Questions Issue I (a). Bernard A. Gillespie, Jr., was in military service from January 16, 1942, to August 6, 1945. At the time of the hearing of this case he was 27 years old. On June 14, 1944, a notice of deficiency was sent by registered mail to Bernard A. Gillespie, Jr., addressed to Theba, Arizona. This letter was not delivered. Thereafter, the above-mentioned letter *28 was sent to Bernard A. Gillespie, Jr., enclosed in an envelope by ordinary mail, together with the following letter dated August 23, 1944, from the internal revenue agent in charge: Lt. Bernard A. Gillespie, United States Army, A.A.F., Childress, Texas. Dear Lt. Gillespie: Under date of June 14, 1944, this office addressed a letter to you by registered mail to your last-known address which was Theba, Arizona, notifying you of your liability as a transferee of the estate of Maud McCoy Gillespie, deceased, Beverly Hills, California, for a deficiency in estate tax liability of $51,238.88. Inasmuch as delivery of the registered letter was refused, and this office is now advised of a later address, the notice is hereby remailed to you in order that you may be advised of the action pending. The notice of June 14, 1944, was properly mailed in full compliance with the law, and the period within which a petition may be filed with the Tax Court of the United States is not extended or suspended by reason of refusal of delivery in Theba, Arizona. The period within which a petition may be filed with the Tax Court of the United States is within ninety days from June 14, 1944. Very truly *29 yours, [Signed] D. A. Sims, Internal Revenue Agent in Charge. Enclosure Statutory Notice WMcM;d Upon receipt, at Childress, Texas, of these letters from the internal revenue agent in charge, the petitioner, Bernard A. Gillespie, Jr., sent "them" to his uncle, Parmer Gillespie, and asked him to take any steps that were necessary to protect his interest. Issue I (b). A notice of deficiency to Estate of Maud McCoy Gillespie, Parmer A. Gillespie, Executor, 912 Thompson Building, Tulsa, Oklahoma, and signed "Joseph D. Nunan, Jr., Commissioner, by D. A. Sims, Internal Revenue Agent in Charge," was delivered to Parmer A. Gillespie, August 8, 1944, by a deputy collector of internal revenue from the Tulsa office. A communication to "Est. of Maud McCoy Gillespie," Tulsa, Oklahoma "was mailed by registered mail on June 14, 1944." On June 14, 1944, a notice of deficiency was sent by registered mail to Parmer A. Gillespie, 912 Thompson Building, Tulsa, Oklahoma, stating estate tax liability in the estate of Maud McCoy Gillespie in the amount of $51,238.88, and that as a fiduciary of the estate having paid debts, or distributed the estate without discharging estate tax liability, *30 he was liable under section 3467 Revised Statutes; also as transferee of property of the estate. The receipt of the registered notice is alleged and admitted in docket No. 5867. Notice was given that the fiduciary capacity of Parmer A. Gillespie had terminated prior to date of the deficiency notice. *
Issue II. F. A. Gillespie and Sons Co., a corporation, was organized under the laws of the State of Oklahoma, on April 24, 1920, the five members of the Gillespie family becoming the original stockholders, with 10,000 common shares of capital stock authorized with a par value of $100 per share. All of this stock was issued in payment of properties owned by the five members of the family and transferred to the corporation upon its organization. The five members of the Gillespie family were F. A. Gillespie, Maud A. Gillespie, husband and wife, and their three sons, Bernard A. Gillespie, Lester A. Gillespie, and Parmer A. Gillespie. At date of organization five shares of the capital stock were issued to each of the members of the family for the purpose of qualifying them as stockholders. Of the capital stock of F. A. Gillespie and Sons *31 Co., 9,975 shares were issued to F. A. Gillespie, Trustee, under the terms of a Trust Agreement dated February 9, 1921. The terms of the trust were agreed to at the time the stock was issued but were not thereafter converted to writing and executed until February 9, 1921. The Declaration of Trust is as follows: KNOW ALL MEN BY THESE PRESENTS: That, WHEREAS, on the 24th day of April, A.D. 1920, there was duly organized and created the F. A. GILLESPIE AND SONS COMPANY, a Corporation, duly organized, created and existing under and by virtue of the Laws of the State of Oklahoma, with a Capital Stock of One Million Dollars [$1,000,000.00], divided into Ten Thousand [10,000] shares, of the par value of One Hundred Dollars [100.00] each; and WHEREAS, several years prior thereto, the undersigned Settlor, Donor and Trustee, F. A. GILLESPIE, had agreed to and did, convey and transfer the equitable title to certain interests, respectively in and to a part of the properties later conveyed by said F. A. GILLESPIE to said Corporation, to be paid for as provided, to MAUD GILLESPIE, B. A. GILLESPIE, L. A. GILLESPIE and P. A. GILLESPIE, the wife and sons of said Settlor, Donor and Trustee, *32 F. A. GILLESPIE; and WHEREAS, said F. A. GILLESPIE AND SONS COMPANY has issued to said F. A. GILLESPIE, in his own name, and standing in his individual name, Nine Thousand, Nine Hundred and Eighty [9,980] of said Capital Stock of said F. A. GILLESPIE AND SONS COMPANY, and Five [5] Shares thereof to MAUD GILLESPIE; Five [5] shares thereof to B. A. GILLESPIE; Five [5] Shares thereof to L. A. GILLESPIE, Trustee for said P. A. GILLESPIE, and said Capital Stock of and in said Corporation is now so held; and WHEREAS, it is the desire of the undersigned Settlor, Donor and Trustee to recognize and maintain the interests, respectively, equitably belonging to said MAUD GILLESPIE, B. A. GILLESPIE, L. A. GILLESPIE and P. A. GILLESPIE, to be paid for as originally arranged, when so conveying and arranging said equitable titles, and to hold said Shares of Capital Stock, as hereinafter set forth, under the terms, conditions and provisions of the Trust Estate, or Trust, hereinafter set forth: NOW, THEREFORE, BY THESE PRESENTS, I do hereby declare that I stand seized and possessed of, and have and hold, Nine Thousand, Nine Hundred and Seventy-Five [9,975] Shares of the Capital Stock *33 of the said F. A. GILLESPIE AND SONS COMPANY, a Corporation, organized, created and existing under and by virtue of the laws of the State of Oklahoma, aforesaid, in trust, having and holding One Thousand, Nine Hundred and Ninety-Five [1,995] thereof as Trustee, and in trust, for said MAUD GILLESPIE; One Thousand, Nine Hundred and Ninety-Five [1,995] thereof as Trustee, and in trust, for said B. A. GILLESPIE; One Thousand, Nine Hundred and Ninety-Five thereof as Trustee, and in trust, for said L. A. GILLESPIE; One Thousand, Nine Hundred and Ninety-Five [1,995] thereof as Trustee, and in trust, for said P. A. GILLESPIE, and One Thousand, Nine Hundred and Ninety-Five [1,995] thereof as Trustee, and in trust, for said F. A. GILLESPIE, for the duration, and under and upon the terms, conditions and provisions hereinafter set forth, as follows, to-wit: 1. Said Shares of said Capital Stock shall, and will be held by said F. A. Gillespie, and his successor or successors, as such Trustee or Trustees, during the lifetime of said Maud Gillespie, B. A. Gillespie, L. A. Gillespie, P. A. Gillespie and F. A. Gillespie, and each of said beneficiaries shall at all times be entitled to all *34 the dividends, for the natural life of each of them respectively, cash, stocks, bonds, or otherwise, accruing and divided and paid, on and from the respective number of shares so held in trust for each of them, respectively, and each shall have a like interest in the surplus, accretions and properties secured by, and added to, said Corporation, during the lifetime of each of them, respectively, and during the continuance of this Trust, and Trust Estate. 2. Said F. A. Gillespie shall be and act as such Trustee during his lifetime, and, upon his death, said Maud Gillespie, B. A. Gillespie, L. A. Gillespie and P. A. Gillespie, or such of them as shall be then surviving, at the time of the death of said F. A. Gillespie, shall succeed said F. A. Gillespie, and shall thereafter be and act as such Trustee or Trustees, and, upon the death of any of such Trustees, respectively, the survivor or survivors thereof shall be and act as such Trustees or Trustee. 3. Said F. A. Gillespie, during his lifetime, as such Trustee, shall have the absolute control of said Stock of said beneficiaries, so held by him in trust, and he may allow the same to stand on the books of said Company in his individual *35 name, or may have the same transferred to him, as Trustee, as he shall decide and determine, but, in either event, during his lifetime, he shall have the absolute power to vote such Stock, as he shall deem fit and proper, and shall not, in any way, be controlled by the beneficiaries in voting the same. 4. In the event the said beneficiaries Maud Gillespie or F. A. Gillespie, or both, should die, leaving the other beneficiaries, or a part thereof, surviving them, or either of them, then the surviving beneficiaries hereunder shall have and take the share or shares of said beneficiary or beneficiaries, share and share alike, each surviving beneficiary receiving an equal and like part thereof, and said stock of said beneficiary or beneficiaries shall then and there become and be, and remain, a part of this Trust Estate, or Trust, and shall be further administered, under the terms hereof, for and during the lifetime of such surviving beneficiaries, as herein provided for. In the event that said beneficiaries B. A. Gillespie, L. A. Gillespie, or P. A. Gillespie, or either, or all of them, should die, before the termination of this Trust Estate or Trust, without children or issue of their *36 own bodies, respectively, then the surviving beneficiaries hereunder shall have and take the share or shares of said beneficiaries, share and share alike, each surviving beneficiary receiving an equal and like part, and said stock of said beneficiary or beneficiaries shall then and there become and be, and remain, a part of this Trust Estate, or Trust, and shall be further administered, under the terms hereof, for and during the lifetime of such surviving beneficiaries, as herein provided for. In the event that said beneficiaries B. A. Gillespie, L. A. Gillespie and P. A. Gillespie, or either, or all of them should die, before the termination of this Trust Estate, or Trust, with children or issue of their own bodies, respectively, surviving them, respectively, then such children or issue shall have and take, share and share alike, under the terms of this Trust Estate, or Trust, the shares of said capital stock held, in trust, hereunder, for such beneficiary or beneficiaries, respectively, and the part or portion of said shares of said capital stock of any predeceased beneficiary or beneficiaries hereunder, passing to such children or issue, shall then and there become and be, and *37 remain, a part of this Trust Estate, or Trust, and shall be administered, under the terms hereof, for and during the continuance of this Trust Estate, or Trust. 5. Said Settlor, Donor and Trustee, F. A. Gillespie, hereby reserves the full right, power and authority, during his lifetime, and while being and acting as said Trustee, to sell, dispose of and convey said Shares of Stock, and to reinvest the funds secured therefor, in such other form or Trust, or Trust Estate, as he may deem best so to do, preserving, however, at all times, the due proportions of interests, respectively, as herein provided for, and likewise to change the form and investment of this Trust Estate, or Trust, as to him shall seem meet and proper, so preserving at all times, said due proportions of interests, respectively, as herein provied [provided] for. 6. Said beneficiaries Maud Gillespie, B. A. Gillespie, L. A. Gillespie and P. A. Gillespie shall not have any right, power or authority, jointly or severally, to sell, convey, transfer, pledge, incumber, mortgage, or in any way dispose of, the whole or any part of the Shares of Capital Stock held hereunder, in trust, for them, and each of them, nor the *38 dividends and income accruing by and from said Shares of Capital Stock, and said Shares of Capital Stock, so held in trust for them, respectively, and said dividends and income, and every interest therein and thereto, shall at all times be free from, and not subject to, any debts of each, or either, or all, of them, or for any indebtedness, or any claims, demands or causes of action whatsoever, that any person, corporation or company shall or may have, or claim, or may claim to have, or that may be made against them, respectively, or any, or either, or all, of them. 7. Upon the death of all the beneficiaries herein named, to-wit, Maud Gillespie, B. A. Gillespie, L. A. Gillespie, P. A. Gillespie, and F. A. Gillespie, this Trust Estate and Trust shall cease and terminate, and said Shares of said Capital Stock, or the interest then existing in said Trustee [Trust] Estate, or Trust, shall thereupon pass absolutely to the remaindermen then living and herein and hereunder provided for, or, in the event, no such remaindermen, specifically mentioned and provided for herein, shall then be living, to the heirs at law entitled thereto, free and clear of any trust or restrictions herein provided *39 for. 10. IN WITNESS WHEREOF, I have hereunto set my hand my hand and seal, this the 9th day of February, A.D., 1921. [Signed] F. A. Gillespie (SEAL) During the year 1929, the five shares of stock of F. A. Gillespie and Sons Co. originally issued to the decedent were delivered to her son Parmer A. Gillespie, then vice president of the company, to be canceled and transferred to F. A. Gillespie, as trustee, and the stock to become a part of the corpus of the trust created in 1921. The stock certificate for these five shares of stock was lost or mislaid after Parmer A. Gillespie gave it to the assistant secretary of the company to be transferred, and the actual transfer on the books of the company was effected December 2, 1941. The value of the stock of the F. A. Gillespie and Sons Co. on September 16, 1941, was $127 per share. F. A. Gillespie was born April 22, 1868, and is living at the present time. Bernard A. Gillespie was born January 26, 1894, at Findlay, Ohio; Lester A. Gillespie was born January 24, 1895, at Findlay, Ohio, Parmer A. Gillespie was born September 24, 1899, at Toledo, Ohio. All were living at the time of trial. At the time the trust was created on February 9, 1921, Bernard *40 A. Gillespie had two children, one a daughter who died later, when about four years old, and Bernard A. Gillespie, Jr.; Lester A. Gillespie had one daughter, aged about one year; Parmer Gillespie had no children. A daughter, Gloria, was later born to Lester A. Gillespie, and was at the time of trial about 16 years of age. At the time of trial Parmer A. Gillespie had three children, aged 21, 19 and 14. None are married. No children were born to Bernard A. Gillespie after creation of the trust. Issue III. By virtue of an agreement entered into on May 15, 1929, between F. A. Gillespie and Sons Co., F. A. Gillespie and Maud Gillespie, F. A. Gillespie and Sons Co. guaranteed to Maud Gillespie that as long as she should live she would receive dividends in the amount of at least $10,000 per year, and if for any reason such funds were not available, then the corporation should cause to be paid to her the sum of $10,000 per year. The following letter was received by F. A. Gillespie and Sons Co. under date of November 16, 1933: Gentlemen: Under the terms of a certain Agreement entered into under date of May 15, 1929, between F. A. Gillespie, F. A. Gillespie and Sons Company and myself, *41 the company is obligated to pay me a cash dividend of $10,000.00 per year - or in lieu of a declared dividend, to pay me an equal sum in cash. Since I realize the company is not at this time financially able to continue these payments, I offer you the following proposition. I agree to allow suspension of such dividend payment of $10,000.00 per year, to be resumed upon the company becoming financially able to resume payment, provided F. A. Gillespie will suspend a like amount from funds he now draws from the company; such suspended funds to be used for the development of the company. Provided further, that F. A. Gillespie pay to me one-half of the net refund on federal taxes received by him in December, 1932 (by net refund, meaning total amount received, less payments made in settlement of suit and for fees and commissions). My agreement of suspension of dividend payments is contingent primarily upon receipt of this money from F. A. Gillespie. * * * This letter is not to be construed to imply that I am waiving my right for all time to future dividends and after three years, if I should so wish, I may demand these payments be continued as set out in the original contract. *42 Trusting this proposition will prove acceptable to the parties concerned, I am Very truly yours, [Signed] Maud Gillespie R. The decedent at no time, after the signing of the letter, made any demand for the resumption of payments under the agreement of May 15, 1929. From 1933 to 1936, the decedent received no payments from F. A. Gillespie and Sons Co. During the years 1937 to 1940, she received $2,000, $2,500, $2,000 and $2,000, respectively. During the year 1941, she received nothing. There were no dividends due and unpaid by F. A. Gillespie and Sons Co. to its stockholders September 16, 1941. Issues IV and V. On or about December 9, 1942, the executor of the estate of Maud Gillespie made the following transfers: (Some $542 worth of property was transferred to six other beneficiaries under the will, none of which is involved in this case.) Beneficiary
Cash
Property
Parmer A. Gillespie
$3,486.26
$ 412.50
Bernard A. Gillespie
3,518.65
282.50
Lester A. Gillespie
3,489.00
417.50
Bernard A. Gillespie, Jr.
3,187.65
3,193.50
On December 7, 1942, Edward Alton, an attorney hired by Parmer A. Gillespie to settle the estate of *43 Maud Gillespie, addressed a letter to the collector of internal revenue, Los Angeles, California, which states in part as follows: After our conference on November 18th, 1942 I wrote to Mr. Parmer A. Gillespie; * * *. Under date of November 30th, 1942, Mr. Harold E. Rorshach [Rorshach's] attorney in Tulsa, Oklahoma, replied to this letter and I enclose his original letter for your files. I am also enclosing copy of the First and Final Account, Report and Petition for Distribution Under Will, for Payment of Statutory and Extraordinary Fees to Attorney, so that you may affix this to the Form 706. I believe Mr. Rorshach's letter is selfexplanatory so that I would suggest that it be immediately audited or, if that is not satisfactory, that the agent communicate by mail directly with Mr. Rorshach [Rorshach's] or Mr. Gillespie. The letter was received by the collector December 8, 1942. The communication referred to in the letter above from Harold E. Rorschach to Mr. Alton and forwarded to the collector's office reads as follows: Your letter of November 18, 1942 directed to Mr. P. A. Gillespie with respect to the above estate has been handed to me for reply. We do not *44 wish to file an amended return at this time, but have elected to take the optional valuation in event it becomes desirable. As the matter stands, the estate is liable for no estate tax in any event. I cannot understand whey [when] the Department is so meticulously exacting in procuring information with respect to the debts, etc., when the gross estate clearly shows no tax liability. I suggest that you advise the Collector of Internal Revenue to proceed with the audit of Form 706 or if that is not satisfactory that he communicate by mail direct with the executor of the estate, stating on what items he desires additional information. The deficiency notice bears the date of June 14, 1944. Opinion Issue I - Jurisdictional Questions. (a) - Bernard A. Gillespie, Jr., - Docket No. 5987. The petitioner, Bernard A. Gillespie, Jr., does not claim that any of the special legislation pertaining to members of the armed services affect in any way the issue here involved. The petitioner does contend that the statute requires that the notice of the alleged deficiency be sent to the transferee (petitioner herein) by the Commissioner of Internal Revenue, by registered mail, to the last *45 known address, and that "Army Air Forces" was the last known address. On the other hand, respondent's contention is that the registered letter sent to petitioner addressed to Theba, Arizona, was sent to the last known address, thus sufficient to comply with the statute and give the Tax Court jurisdiction. Petitioner cites Henry M. Day, 12 B.T.A. 161, to the effect that the Commissioner is bound to take notice of a different address when notified by the taxpayer. In the instant case the last known address of the petition, as far as the Court has been advised, is that of Theba, Arizona, which appeared in the schedule "HEIRS, NEXT OF KIN, DEVISEES and LEGATEES" in the estate tax return filed November 10, 1943. Petitioner contends that a new address was given in Mr. Rorschach's letter to Mr. Sims under date of April 22, 1944, in which it was suggested as to the petitioner's address the following: "B. A. Gillespie, Jr. is in the Army Air Force. The last information I have is that he is in foreign service." It is obvious that this is not an address, but rather a statement as to his activities. "Address" as a noun, is defined in Webster's New International Dictionary as: "Direction *46 or superscription of a letter, or the name, title, and place of residence of the person addressed." "Army Air Force" would clearly be no address for this petitioner. The only question that remains, therefore, is whether the notice of deficiency was sent by registered mail. Though in his reply brief petitioner argues strongly that there is no proof that the letter dated "JUN 14, 1944" was sent by registered mail to anyone, petitioner seems to overlook the allegation of his amended petition that the deficiency letter, copy of which is attached to the amended petition, "was mailed to petitioner on or after June 14, 1944, by registered mail, directed to Theba, Arizona, and that being unclaimed, the postmaster returned said letter to the sender, D. A. Sims, Internal Revenue Agent in Charge, Oklahoma City, Oklahoma. And thereafter, on or after August 23, 1944, said letter was sent to the taxpayer enclosed in an envelope by ordinary mail * * *." The original petition alleges essentially the same, except that it does not say that the registered mail was directed to Theba, Arizona. These allegations were admitted by the respondent in his answer to amended petition. When we add consideration *47 of the fact that under date of June 14, 1944, the postmaster of Oklahoma City issued a receipt for registered mail directed to "Bernard A. Gillespie, Jr., Theba, Arizona," we can not but conclude that the deficiency notice in docket No. 5987 was mailed by registered mail to the last known address of the petitioner. We need add only then consideration of Commissioner v. Rosenheim, 132 Fed. (2d) 677, which, quoting and considering section 272 (a) and (k) of the Revenue Act of 1938 (the same as section 272 (a) and (k) of the Internal Revenue Code), holds: By the terms as well as by the plain implications of the pertinent statutory provision, the sufficiency of a notice of transferee liability depends upon its being sent by registered mail to the last known address of the person subject to the liability rather than upon whether such person actually receives it. * * * That case involved income tax, but the language interpreted is in no essential sense different from that of section 901 (d) of the Internal Revenue Code, which provides, with reference to claims against transferees and fiduciaries, as follows: (d) Address for Notice of Liability. - *48 In the absence of any notice to the Commissioner under subsection (a) or (b), notice under this subchapter of a deficiency or other liability, if addressed in the name of the decedent or other person subject to liability and mailed to his last known address, shall be sufficient for the purposes of this subchapter. In Oscar Block, 2 T.C. 761, we considered a motion to dismiss for lack of jurisdiction. Petition had been filed more than 90 days after deficiency notice had been sent by registered mail. Thereafter it was returned and remailed by ordinary mail to another address, forwarded to a third address and eventually reached the taxpayer. The registered mailing was on April 8, 1943, and the ordinary mailing on April 30, 1943. Petition was filed on July 22, 1943, more than 90 days from April 8, but less than 90 days from April 30. We said: "The Court has no authority to enlarge its jurisdiction by accepting petitions filed more than 90 days after the mailing of a statutory notice of deficiency," and dismissed the proceeding for lack of jurisdiction. Hence the Court recognized the proper mailing of the notice as of April 8, 1943. By the same logic we deny the motion to *49 dismiss for lack of jurisdiction in docket No. 5987, it being based upon registered mailing, as required by the statute. (b) Parmer A. Gillespie - Docket No. 5881. In docket No. 5881, the deficiency notice was on its face directed to the Estate of Maud McCoy Gillespie, Parmer A. Gillespie, Executor. Parmer A. Gillespie filed his petition, alleging, first, that he had had no official connection with the estate since July 13, 1943 (the date of his discharge as executor), and second, that the notice of deficiency was not sent by registered mail. At the time of trial and on October 2, 1945, a motion to dismiss for lack of jurisdiction was presented and denied. On October 3, 1945, an amended petition was filed by leave given in which the jurisdiction of the Court was challenged, in effect, on the grounds that petitioner had been discharged as executor and that the deficiency notice had not been sent by registered mail. On brief, petitioner therefore argues the question of jurisdiction. In our opinion, we have no jurisdiction in Docket No. 5881. Section 901 of the Internal Revenue Code provides for notice to the Commissioner of appointment as executor, after which *50 such person shall assume the powers, rights, duties, and privileges of an executor until notice is given that he is no longer acting. Parmer A. Gillespie gave both notices and the collector of internal revenue acknowledged receipt of the notice, of February 3, 1944, that the executor had been discharged, and again on April 21, 1944, the internal revenue agent in charge of the Oklahoma City division recognized that the estate had been closed. Under such circumstances, and irrespective of the validity of the deficiency notice, dated June 14, 1944, in our view there was no executor on June 14, 1944, upon whom to serve the deficiency notice. Estate of Nellie L. Rhodes, 44 B.T.A. 1315; St. Louis Union Trust Co. et al., Trustees, 21 B.T.A. 76. Case No. 5881 is therefore dismissed. The point seems largely immaterial here, in the light of our conclusions below, and inasmuch as in the other docket numbers here involved the deficiency notices are directed to the petitioners as transferee, after distribution of the estate, and upon the theory that the estate had been closed, as the collector for the sixth district of California had been notified on February 3, 1944. *51 Although motions to dismiss for lack of jurisdiction were overruled at the time of trial in docket Nos. 5867, Parmer A. Gillespie; 5882, Bernard A. Gillespie; and 5883, Lester A. Gillespie, upon brief the petitioners renew their motions and brief the matter. We therefore consider those cases at this point. In addition to the facts above set forth in this respect, to wit, that on April 22, 1944, R. E. Rorschach, attorney for the petitioners, supplies to the internal revenue agent in charge, D. A. Sims the address of L. A. Gillespie as Houston, Texas; the address of P. A. Gillespie as 912 Thompson Building, Tulsa, Oklahoma; and the address of B. A. Gillespie as Gila Bend, Arizona, we find the facts on this proposition to be that on June 14, 1944, the internal revenue agent in charge mailed by registered mail notices of deficiency to Bernard A. Gillespie, petitioner in docket No. 5882, at Gila Bend, Arizona; to Lester A. Gillespie, petitioner in docket No. 5883, at Houston, Texas; and to Parmer A. Gillespie, petitioner in docket No. 5867, at Tulsa, Oklahoma. The petitions in each of the last numbered cases so alleged and the answers therein so admit. Thereafter, notice of deficiency *52 was delivered by a deputy collector to Bernard A. Gillespie on or about August 10, 1944. The notices of deficiency in each of the three cases were marked "REGISTERED MAIL" and were addressed to Parmer A. Gillespie at 912 Thompson Building, Tulsa, Oklahoma; to Lester A. Gillespie at Houston, Texas; and to Bernard A. Gillespie at Gila Bend, Arizona. Each was signed "Joseph D. Nunan, Jr., Commissioner, by D. A. Sims, Internal Revenue Agent in Charge." The motions to dismiss in all three cases were based upon the contention that the deficiency notices were issued by D. A. Sims, the internal revenue agent in charge, instead of the Commission of Internal Revenue, and in the case of Bernard A. Gillespie on the further ground that the deficiency letter was delivered manually. The briefs in docket Nos. 5867, Parmer A. Gillespie, and 5883, Lester A. Gillespie, recite that the registered letters were "received * * * in due course." The renewed motions for dismissal are denied. The deficiency notices were not required to be signed by the Commissioner himself. Fanny Newman et al., 6 B.T.A. 373; Smith v. United States, 22 Fed. Supp. 1011. Nothing in this case indicates *53 lack of authority from the Commissioner to the revenue agent in charge to issue the deficiency notices. It is not shown that the statute has not been complied with in any of the cases. Issue II. Respondent contends that the fair market value of the 2,000 shares of stock of F. A. Gillespie and Sons Co. (which we have found to be $127 a share) should be included in decedent's gross estate under section 811 (a), Internal Revenue Code, because decedent was the owner of the shares of stock at the date of her death; and in the alternative, that the corpus of the trust to the extent of 1,995 shares of stock contributed by the decedent is includible in her gross estate as a transfer to take effect, in possession or enjoyment, at or after death, within the meaning of section 811 (c) [1] of the Internal Revenue Code. *54 In support of the first point, respondent contends that the trust instrument itself recites that 1,995 shares of the stock were held in trust for decedent and that this stock was held in trust until decedent's death, whereupon it vested by direction of decedent in the other beneficiaries; therefore that it is includible in her gross estate under section 811 (a), Internal Revenue Code. It is contended that the trustee was only trustee for the beneficiaries and that he was acting as the agent of the beneficiaries of the trust. Respondent states that in accordance with The Pennsylvania Co. for Ins. on Lives & Granting of Annuities, Executors, (Knight, Jr., Will, Edward C.) v. United States, 62 Fed. Supp. 697 (Court of Claims, 1945), the decedent, in the case at bar, was in equity the complete owner of this stock at the time of her death. However, it is noted that in the Pennsylvania Co. etc. case the Commissioner's action was based upon the theory that under the trust instrument the grantor retained a possibility of reverter and, that therefore, the transfer was "intended to take effect in possession or enjoyment at or after" the death of the deceased. *55 The court found that the grantor retained a reversion in case of death of the other life tenant without descendants prior to his death; also a right of testamentary appointment effective if the life tenant survived grantor and died without descendants, and upheld the deficiency. The respondent's argument that the stock belonged to the decedent at the date of her death, under section 811 (a), because the trust instrument so indicated is not aided by the case above cited. Respondent does not argue here that the trust instrument, itself, is defective, as was argued in the cited case, but rather that by the trust instrument he decedent retained title to the 1,995 shares of stock. However, according to the trust instrument the decedent never acquired title to the shares of stock but rather they were issued directly to F. A. Gillespie as trustee and in trust for the decedent. Reinecke v. Smith, 289 U.S. 172, defines the word "trustee" as, "the person who holds title in the res and administers it for the benefit of others." In the instant case it is undisputed that both the beneficiaries and donor have an interest in the trust. The beneficiaries' interest is in the corpus *56 of the trust while the donor's interest is in the income for life. Due to this dual responsibility of the trustee, we find no fault in calling him both trustee for beneficiary as well as for the donor. Petitioner could receive only the income from the trust corpus. The trustee had power to sell, and to change the form of trust corpus. The corpus remained in trust after decedent's death, and until the death of all named beneficiaries. We can not agree that the decedent remained the owner of the shares of stock, and hold that decedent at death owned no interest under section 811 (a). As to the alternative issue, the respondent argues that the corpus of the trust, to the extent of 1,995 shares, is includible in decedent's gross estate as a transfer to take effect, in possession or enjoyment, at or after death within the meaning of section 811 (c) of the Internal Revenue Code. Since the transfer was made before the joint resolution of March 3, 1931, respondent does not contend that the transfer comes within section 811 (c) by virtue of the fact that the income was payable to the decedent during her life, but argues that it does come within that section because *57 the trust agreement provides that upon the death of the decedent her interest in said stock vested in said beneficiaries. This argument is further advanced by the respondent where he says that it is obvious that the ultimate takers of the remainders of decedent's stock could not be determined until she died, and that until she died there was a possibility that one or more of the surviving beneficiaries might predecease her, in which case his share would pass to one of the other beneficiaries or their children; and that, therefore, until the death of the decedent there was uncertainty as to just who would take and what the share of each would be. "This uncertainty," says respondent, "requires the stock to be included in the gross estate under section 811 (c)." Respondent contends that it is immaterial as to the degree of remoteness of possibility that the decedent, or her estate, might reacquire the property by operation of law. He further contends that this view was announced in Commissioner v. Estate of Lester Field, 324 U.S. 113, where the Supreme Court said: Since the corpus of the trust did not shed the possibility of reversion until the decedent's death, the value *58 of the entire corpus on the date of death was taxable * * *. However, as we view that decision, the Court did not decide the case on the ground here suggested by the respondent. The Court said, page 116: * * * Thus until decedent's death it was uncertain whether any of the corpus would pass to the beneficiaries or whether it would revert to the decedent. Decedent retaining a string attached to all the property until death severed it, * * *. Hence, we see that the opinion is controlled by the retention by the trustor of a string on the corpus rather than the question of which beneficiary would receive the corpus or how much each beneficiary would receive. As we view this situation, the respondent's theory is not well taken. The conveyance was in trust, which was to terminate only upon the death of the last of five trustor-beneficiaries. Decedent's death prior to that time, that is, if she was not the surviving trustor-beneficiary, would cause no change in the trust situation or control over the stock placed in trust by her. It would continue in trust until the death of the last surviving trustor-beneficiary. She retained no reversion, no string on it, necessarily severed by her *59 death. Her interest in the trust stock had passed into the trust estate at its creation, and would remain there until its termination regardless of her death, at which termination of trust only would pass it to remaindermen, or, if none, to the heirs, in the words of the instrument. This passage to such remaindermen the respondent does not seem to question; and the remaindermen could only be the "children or issue of their own bodies" of the three sons of the decedent, since all such sons, and the decedent and F. A. Gillespie, must die before the trust could terminate. It is, therefore, only in case of decedent's being the survivor among the five named trustor-beneficiaries, that her death can cause termination of the trust, which is to be caused by death of the survivor, whoever that may be. Under the logic of the Frances Biddle Trust, 3 T.C. 832; Estate of Harris Fahnestock, 4 T.C. 1096; and Estate of George W. Hall, 6 T.C. 933, we think that the death of the decedent was not the "'intended event' which enlarged the estate" of any grantee. As we said in the Fahnestock case: "If the grantor had died on the next day after the creation of the *60 trusts, this event would not have changed or affected in any way the devolution of the trust estates." That her death, if possibly she was the survivor out of five people, would work the termination of the trust, is not significant. Though a contingency perhaps not so remote as in the cases cited above, under the same logic her death was not the event which the statute requires as being within the intent of the grantor to pass the estate; and the stock could pass to her estate, at the termination of the trust, only in case she outlived her sons, their children and issue of their own bodies, and (if we consider - as we think reasonable - that the expression "in the event no such remaindermen * * * shall then be living, to the heirs at law * * *" means heirs of such remaindermen) if she outlived also all such heirs of trustor-beneficiaries. Such a possibility would be of the remotest degree, and altogether within the thought of the cases last above cited. As we indicated in the Hall case, we do not think Commissioner v. Estate of Lester Field, supra; Goldstone v. United States, 325 U.S. 687, or Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, *61 require a contrary holding. We hold that the 1,995 shares of stock was not includible in decedent's gross estate, therefore, that no transferee liability is shown because thereof. As to the five shares of stock of F. A. Gillespie and Sons Company shown in the trust instrument as belonging to the decedent were issued to her on certificate No. 2, May 1, 1920: Respondent contends that this certificate was cancelled and reissued as certificate No. 14 for five shares to F. A. Gillespie, trustee, on December 2, 1941. Therefore, since Maud Gillespie died on September 16, 1941, he included the value of five shares in decedent's gross estate, under section 811 (a). However, the Oklahoma Supreme Court, in Petty v. Knight-Petty Mercantile Co., 220 Pac. 835, states the rule for Oklahoma as follows: Under section 1237, Rev. Laws 1910, corporate shares of stock are personal property, negotiable, and may be transferred by the owner by indorsement and delivery, which is valid between the parties, whether the transfer is entered upon the books of the corporation or not, and the legal holder thereof is entitled to participate in the organization and conduct of the corporation as a stockholder *62 or member of such corporation. From this we conclude that title passed from Maud Gillespie during the year 1929 when she turned the five shares over to P. A. Gillespie with instructions to concel and reissue them in the name of F. A. Gillespie, trustee. Issue III. The issue as to whether or not decedent's estate was entitled to receive the sum of $62,917.05 from F. A. Gillespie and Sons Co. turns completely on the fact as to whether or not the corporation was liable for payments under the May 15, 1929, contract, in which the corporation agreed to pay Maud Gillespie $10,000 a year, either by dividends or by payment by the corporation. The corporation received a letter from Maud Gillespie under date of November 16, 1933, in which she agreed to the suspension of the above-mentioned dividend payments on certain conditions, i.e., that F. A. Gillespie suspend a like amount from funds being drawn by him from the company, also that he pay Maud Gillespie one-half of a net refund of taxes received by him in December 1932. The only evidence before us indicating any compliance with such conditions is the fact, above found, that Maud Gillespie never later demanded such payments. In our *63 opinion we may not conclude therefrom that the conditions had been met, therefore that her estate did not own the right to receive the $62,917.05. Her failure to make later demands upon the company for the $10,000 per year may have been actuated by other reasons than acceptance of her offer; e.g., she may not have felt need for the money and may have considered that in large part it would benefit her sons, natural objects of her bounty. We think the petitioners, by the mere evidence of no later demand by her, failed to set up even a prima facie showing sufficient to meet the presumption or correctness of determination by the Commissioner. Not mere offer, but contract executed and carried out, was necessary to deprive Maud Gillespie, and her estate, of the right to receive the annual payments. The letter particularly stresses the fact that she did not waive that right after three years. We conclude that the estate possessed the right to receive the $62,917.05. This leaves for consideration questions (4) and (5), above stated, as to the liability of the petitioners, as transferees, for the additional estate tax based on that amount. (The $62,917.05 is insufficient to cause imposition *64 of basic estate tax, after the elimination above of the $254,000 for stock.) We have found that each of the petitioners received from the estate cash and property, the amount in the case of each being above $3,800. We have roughly computed the additional estate tax resulting from inclusion in the estate of the $62,917.05 (together with $1,067.43, executor's commissions also added to estate, about which there appears no argument) under the statute applicable on the date of decedent's death, i.e., section 935, Internal Revenue Code prior to amendment by section 401, Revenue Act of 1941; and have found such tax to be considerably less than $3,800. Therefore, the petitioners are liable, at law and in equity, as transferees for the additional estate tax, the amount received from the estate being in excess of the additional estate tax. Section 900, Internal Revenue Code. Since this is true of Parmer A. Gillespie, petitioner in docket No. 5867, as well as the others, it is unnecessary to consider further whether he is also liable under section 3467, Revised Statutes. Decisions will be entered that the petitioners are liable as transferees at *65 law and in equity for the amounts of additional estate tax to be entered under Rule 50 in Docket Nos. 5867, 5882, 5883, and 5987; and order of dismissal will be entered in Docket No. 5881. Footnotes
*. General facts will be given first, followed by the additional facts pertaining to each issue.↩
*. See general findings of fact, above.↩
1. SEC. 811. GROSS ESTATE. (Part II, Subchapter A.) The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - (a) Decedent's interest. - To the extent of the interest therein of the decedent at the time of his death; * * * *
(c) Transfers in Contemplation of, or Taking Effect at Death. - To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from the property, or (2) * * *.↩